```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                      Civil No. 10-3603(DSD/FLN)
```

Marlin O. Osthus, Regional
Director of the Eighteenth
Region of the National Labor
Relations Board, for and on
behalf of the National Labor
Relations Board,

        Petitioner,

v. **ORDER**

Laborers District Council of
Minnesota and North Dakota,

        Respondent.

    James L. Fox, Esq., Nichole L. Burgess-Peel, Esq.,
    National Labor Relations Board, Region 18, 330 Second
    Avenue South, Suite 790, Minneapolis, MN 55401, counsel
    for petitioner.

    Brendan D. Cummins, Esq. and Miller O'Brien Cummins,
    PLLP, 120 South Sixth Street, Suite 2400, Minneapolis, MN
    55402, counsel for respondent.


This matter is before the court upon the petition for a temporary injunction by the Regional Director of the National Labor Relations Board (Board). Based on a review of the file, record and proceedings herein, and for the following reasons, the court denies the petition.


**BACKGROUND**

In this labor dispute, the Regional Director charges that respondent Laborers District Council of Minnesota and North Dakota (Union) exerted coercive economic pressure on Lake Area Fence, Inc.

(Lake Area) to force it to cease doing business with Century Fence Company (Century),[1] in violation of § 8(b)(4)(ii)(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(b)(4)(ii)(b). The Union has negotiated a Highway and Heavy Construction (Highway-Heavy) agreement with a multi-employer association in Minnesota. The Highway-Heavy agreement includes fence installation work. Century is a fencing contractor that subcontracts labor on fencing projects; it is not, however, a signatory to the Highway-Heavy agreement. Lake Area is a newly incorporated subcontractor that installs fencing.

Prior to incorporating Lake Area, owner Sharon Roush (Roush) discussed becoming a contractor with Century. Century asked Roush to become a union subcontractor. As a result, Roush contacted the Union on April 14, 2010, to inquire about becoming a signatory to the Highway-Heavy agreement. On April 16, 2010, two marketing representatives from the Union met with Rouse at her home office to discuss becoming a union contractor. The Union representatives gave Rouse copies of a New Contractor Processing Form (Form), Acceptance of Agreement (Acceptance) and two copies of the Highway-Heavy agreement.

The parties agree that the documents were not completed. The Acceptance states that it "is intended to be effective when signed

---

[1] The Regional Director also cites two previous cases where it charged the Union under § 8(b)(4)(ii)(B) for similar activities in relation to Century. Both prior matters settled informally.

by the Employer, an authorized Local Union or District Council representative, and the President of the Laborers' District Council of Minnesota and North Dakota ...." Resp.'s Hr'g Ex. 9. Roush signed the Acceptance on behalf of Lake Area on April 16, 2010. See id. The local representative and the president of the Union did not sign the document. See id. Roush faxed the Form to the Union on April 20, 2010, but did not complete the blanks asking whether Lake Area is bonded, its license number, names of its labor employees, and representative projects that it had been awarded or on which it was bidding. See Pet'r's Hr'g Ex. 11. The Form states, "This form must be completed ... in order for Acceptance of Agreements to be processed." Id.

On April 22, 2010, the parties exchanged phone calls. Roush called Dan McGowan, a Union representative, to ask if the Union had signed the Acceptance, and McGowan said that he would inquire. According to the Regional Director, McGowan then called Roush back and asked for whom Lake Area would be working. Roush told him that Lake Area would be working for Century beginning on April 26, 2010. McGowan called Roush again and told her that the Union had not approved Lake Area as a contractor and would not be signing the Acceptance. Pet'r's Br. 5-6. The Union asserts that Roush did not tell McGowan about Century until the third phone call. Resp.'s Br. 9. A series of emails followed, in which the president of the Union told Roush that she had improperly filled out the Form and

3

that the Union was unsure that Lake Area could pay the benefits required under the Highway-Heavy agreement. The Union did not specify the problems with the Form.

On May 4, 2010, McGowan sent an email to Roush stating, "I have spoken to [the president of the Union] and he has decided not to sign Lake Area Fence to an agreement at this time." Roush filed a charge with the Board on May 12, 2010. Following investigation, the Regional Director determined that there was reasonable cause to believe that the Union had violated § 8(b)(4)(ii)(B) of the NLRA and issued a complaint. On August 18, 2010, following a hearing before an administrative law judge, the Regional Director filed the instant petition. The court heard arguments from both parties on September 21, 2010, and now considers the petition of the Regional Director.

**DISCUSSION**

Under § 10(*l*) of the NLRA, when the Regional Director "has reasonable cause to believe [a charge under § 8(b)] is true and that a complaint should issue" he shall petition the appropriate United States District Court "for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter." 29 U.S.C. § 160(*l*). "Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just

and proper, notwithstanding any other provision of law." Id. Therefore, when considering whether to issue a temporary injunction under § 10(*l*), the court must (1) determine whether reasonable cause exists and if so, (2) whether the relief sought is just and proper.

**I. Reasonable Cause**

A district court considering a temporary injunction under § 10(*l*) does not "decide whether, in fact, a violation has occurred," but rather "[t]he inquiry of the district court is limited to a determination of whether the Board had reasonable cause to believe the [NLRA] was being violated as charged, and if it so concludes, it must grant such relief as it deems just and proper." Solien v. United Steelworkers of Am., AFL-CIO-CLC, 593 F.2d 82, 87 (8th Cir. 1979). "The statutory standard of 'reasonable cause' is satisfied if there is a showing of factual issues which must be resolved by the Board." Id. In short, a court accepts the Regional Director's finding of reasonable cause unless "there is no reasonable basis upon which the [Regional Director] would be able to sustain [his] charge before the Board." Solien, 593 F.2d at 87. Thus, the question before the court is only whether the Regional Director has reasonable cause to believe that the Union violated § 8(b)(4)(ii)(B).

Section 8(b)(4)(ii)(B) states:

> It shall be an unfair labor practice for a labor organization or its agents ... to

5

> threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is ... forcing or requiring any person ... to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees ....

29 U.S.C. § 158(b)(4)(ii)(B). An act is coercive when it "is reasonably likely to threaten the neutral party with ruin or substantial loss." NLRB v. Retail Store Emps. Union, Local 1001, 447 U.S. 607, 615 n.11 (1980).

The Regional Director argues that the inability to obtain jobs for which union labor is required is coercion within the meaning of § 8(b). The Union responds that its refusal to enter into an agreement with Lake Area is not coercive because Lake Area is performing nonunion work, is not threatened with loss of employees and is not in danger of being driven out of business. Moreover, the Union asserts, it is not causing any form of work stoppage or urging anyone to refrain from doing business with Lake Area. Although the inability to bid on union work when other work is available does not necessarily threaten ruin or substantial loss, factual issues exist about the extent of financial loss incurred by Lake Area. Therefore, the court must find that the Regional Director could find reasonable cause to believe that a violation

has occurred. See Solien, 593 F.2d at 87. Accordingly, the court proceeds to consider whether a temporary injunction is just and proper.

**II. Just and Proper**

The parties disagree on the standard for determining whether the requested injunction is just and proper. The Regional Director argues that the court must grant the injunction if it finds that reasonable cause exists to believe a violation occurred. Pet'r's Br. 15. The Union argues that the court should apply the traditional equitable considerations, as articulated in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109 (8th Cir. 1981) (en banc), to determine whether the requested injunction is just and proper; that is, whether the injunction is required to preserve the status quo or prevent frustration of the statutory purpose of the NLRA.

The Eighth Circuit applies the standard articulated in Dataphase to temporary injunctions under § 10(j), but has not directly addressed the application of Dataphase in § 10(*l*) cases. See Sharp v. Parents in Cmty. Action, Inc., 172 F.3d 1034, 1037–39 (8th Cir. 1999). Decisions of the Supreme Court since Solinen suggest that more is required under the just and proper inquiry of § 10(*l*) than a mechanical grant of an injunction. See id. at 1038 n.3 ("Our opinions applying § 10(*l*) contain language suggesting that if the Board shows the 'reasonable cause' referred to in that

7

statute, traditional equitable principles need not be examined to determine if injunctive relief would be 'just and proper.' [citations omitted] After Romero-Barcelo, it would be inappropriate to rely upon that language without carefully considering the facts of those cases and the equitable considerations typically relevant to § 10(*l*) injunctions.").

In Romero-Barcelo, the Court held that unless a statute clearly indicates the intent of Congress to foreclose the exercise of equitable discretion by the courts, the courts retain equitable discretion "which must include the ability to deny as well as grant equitable relief." See Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-320 (1982). When a statute does not abrogate the traditional equitable discretion of the court, the court applies the four traditional equitable factors. See Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008).

The circuit courts of appeals apply different standards to § 10(*l*) cases. Some apply the traditional equitable. See Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO, 611 F.3d 483, 489-90 (9th Cir. 2010) ("It is well established that, to determine whether an injunction is 'just and proper,' courts apply the familiar set of four equitable factors ....") (citation and internal quotation marks omitted); Kinney ex rel. NLRB. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO, 994 F.2d 1271, 1277-78 (7th Cir. 1993) ("[T]he judge must

8

apply the traditional test in equity to determine whether an injunction would be 'just and proper.'"). Other circuits, as well as cases in the Eighth Circuit decided prior to Romero-Barcelo, simply ask whether the injunction preserves the status quo or is necessary to effectuate policy as announced by Congress. See Pye v. Teamsters Local Union No. 122, 61 F.3d 1013, 1020-21 (1st Cir. 1995); Wilson v. Milk Drivers & Dairy Emps. Union, Local 471, 491 F.2d 200, 203 (8th Cir. 1974).

The language of § 10(*l*) and § 10(j) and dicta in Sharp suggest that the Eighth Circuit would follow the reasoning of Small and Kinney. Section 10(j) of the NLRA uses nearly identical language to § 10(*l*). Compare 29 U.S.C. § 160(j) ("... shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."), with id. § 160(*l*) ("... shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper ...."). The Eighth Circuit has adopted the Dataphase factors for § 10(j) injunctions. Moreover, the court is persuaded by the reasoning in Small and Kinney, that the just and proper mandate in § 10(*l*) shows the intent of Congress for courts to apply traditional equitable principles. Because the standard is uncertain, however, the court analyzes the instant petition under both standards.

**A. Traditional Equitable Factors**

The Dataphase factors are not a rigid formula, but rather a flexible set of traditional equitable principles, which the court applies to determine whether an injunction is "necessary either to preserve the status quo or to prevent frustration of the basic remedial purpose of the [NLRA]." Sharp, 172 F.3d at 1038–39. The court considers: 1) the threat of irreparable harm in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the Regional Director's ultimate success on the merits and (4) the public interest. See Dataphase, 640 F.2d at 114.

**1. Irreparable Harm**

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999). The irreparable harm at issue in a § 8(b)(4)(ii)(B) action is the harm to labor-management relations by unfair labor practices against secondary employers if a remedy must await the Board's full adjudicatory process. Cf. Sharp, 172 F.3d at 1039; Wilson, 491 F.2d at 203.

The Regional Director argues that the court should force the Union to abide by the terms of the Highway-Heavy agreement[2] to

---

[2] The Regional Director argues that directing the Union to abide by the terms of the Highway-Heavy agreement is different than
(continued...)

ensure that the Union does not act with unlawful motive. The Union argues that the NLRA does not contemplate forcing parties to enter into contracts where no agreements exist. The Union is correct. See H.K. Porter Co. v. NLRB, 397 U.S. 99, 102 (1970); NLRB v. American Nat'l Ins. Co., 343 U.S. 395, 404 (1952); NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45 (1937). Here, the parties agree that the Union and Lake Area never entered into a contract. See Pet'r's Br. 4-7; Resp.'s Br. 8-11. Moreover, no evidence suggests that the parties reached agreement, and the plain language requiring completion of the Form and the signatures of the Union precludes a finding that the parties had reached an agreement. The court will not force the Union to enter into and abide by an agreement that it did not make. See Local Union No. 80, Sheet Metal Workers Int'l Ass'n AFL-CIO (Limbach), 305 N.L.R.B. 312, 316 (1991), rev'd on other grounds, 989 F.2d 515 (D.C. Cir. 1993). The proposed injunction would alter rather than maintain the status quo, and because the remedy that the Regional Director seeks is not available, the proposed injunction would not prevent frustration of the NLRA. Therefore, the Regional Director has not shown irreparable harm, and denial of the temporary injunction is warranted.

---

[2](...continued)
forcing the Union to allow Lake Area to become a signatory to the agreement. The court finds there to be no practical difference between these two remedies.

## 2. Balance of Harms

The court has already determined that the Regional Director has not shown irreparable harm. Moreover, the NLRA depends on freedom of contract. See H.K. Porter, 397 U.S. at 108. Forcing a union and employer to enter into an agreement where none exists harms both the Union and the bargaining process. Therefore, this factor weighs against an injunction.

## 3. Success on the Merits

In a typical preliminary injunction, a petitioner need not prove a greater than fifty-percent likelihood of success. See Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991). In a § 10(*l*) injunction, the standard for success is "is not as stringent as the standard for a preliminary injunction." Dawidoff v. Over-the-Road, City Transfer, Cold Storage, Cold Storage, Grocery & Market Drivers, Helpers & Inside Emps. Union Local 544, 736 F.2d 465, 465 (8th Cir. 1984). The court has already determined that the Regional Director has reasonable cause to believe that the Union violated § 8(b)(4)(ii)(B). However, the Regional Director has not demonstrated any likelihood of success on the merits of the case. The Regional Director provides no example of the Board forcing parties to enter into a contract where no agreement existed. Cf. Gottfried v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 80, 927 F.2d 926 (6th Cir. 1991) (union unlawfully terminated

relationship); Ryan Heating Co., 297 N.L.R.B. 619 (1990) (union and employer had 22-year § 8(f) relationship), enforcement denied, 942 F.2d 1287 (8th Cir. 1991). Therefore, this factor weighs against an injunction.

    **4. Public Interest**

There is a public interest in fair labor practices and in freedom of contract. Therefore, this factor does not favor either party. Accordingly, considering the traditional equitable factors as articulated in Dataphase, a temporary injunction is not just and proper in this case.

  **B. Status Quo and Frustration of Remedial Purposes of the NLRA**

The petition of the Regional Director also fails if the court does not apply the Dataphase factors, and instead asks whether an injunction under § 10(*l*) is needed to maintain the status quo and avoid frustration of the remedial purposes of the NLRA. See, e.g., Wilson, 491 F.2d at 203. The court has already determined that forcing the Union to enter into a contract is not within the purposes of the NLRA and is contrary to case law. Moreover, it would alter the status quo in this case. Therefore, a temporary injunction is not just and proper.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the petition for injunction [Doc. No. 1] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 4, 2010

s/David S. Doty  
David S. Doty, Judge  
United States District Court